UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA         :

v.                               :        1:21-CR-204-BAH

ERIC TORRENS                     :

**SUPPLEMENT TO DEFENDANT'S OBJECTION TO PUBLIC DISSEMINATION OF VIDEO DISCOVERY MATERIAL**

Mr. Eric Torrens, through counsel, respectfully submits this supplement in support of his objection to the public dissemination of video discovery material. Mr. Torrens adopts and incorporates his objection, ECF No. 68.

*First*, the records are not required as a factual basis for Mr. Torrens' guilty plea, which will be supported both by the Statement of Facts that he signed and will attest to as his plea colloquy, as well as his answers to questions under oath during the Rule 11 plea colloquy. Neither party sought or seeks any reliance upon the videos at the change of plea hearing.

*Second*, "not all documents filed with courts are judicial records." *SEC v. Am. Int'l Group*, 712 F.3d 1, 3 (D.C. Cir. 2013). "[W]hether something is a judicial record depends on 'the role in plays in the adjudicatory process.'" *Id.* (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. 1997)). In *Leopold v. United States*, 964 F.3d 1121 (D.C. Cir. 2020), the D.C. Circuit referenced a two-prong requirement to render an exhibit a judicial record: that the party "intended to influence the court," 964 F.3d at 1128, and 2) that the court ultimately makes a decision about the record in question, *id.* The discovery videos are not intended to influence the court. They were provided ministerially to the Court in response to a Court Minute Order.

Neither party intended to influence the Court with the submission.

Additionally, the parties did not seek, and the Court needs not make, any decision *about* the videos. *Id.* (documents submitted to court are only judicial records if relevant court actions are "'decisions about them'"); *see League of Women Voters v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) (affirmatively briefed issues played role in decision-making process); *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017) (referencing, by analogy, requirement that document or exhibit be "relied" upon by court in reaching its decision and that court's decision be "about them" to qualify as judicial record). The Court does not need to review the videos, and the defense respectfully submits that the Court should not do so. Even if the Court has already downloaded and reviewed the videos, the Court can and should determine sufficiency of the factual basis for the plea based upon the Statement of Facts and the Rule 11 colloquy without reliance to such viewing.

Because the discovery videos were not intended to influence the Court and because the Court need not make a decision about the videos, they are not judicial records. Accordingly, they are not subject to a presumption in favor of public access. Rather, they are like the bulk of other discovery materials in this case and in other cases in the courthouse that is traditionally not disclosed (and here is subject to a restrictive discovery order). The Court should not issue a public dissemination order.

*Third*, even if the Court concludes that the discovery videos are judicial records, Mr. Torrens objects to disclosure under the long-established balancing test of *United States v. Hubbard*, 650 F.2d 293, 314-15 (D.C. Cir. 1980). With regard to the *Hubbard* factors,

(1) there is no need for public access to the videos because the factual basis for the plea

will be established by the Statement of Facts and Mr. Torrens' sworn testimony during the plea colloquy. The videos were provided to the Court not for an adversarial purpose but to fulfill an administrative function of responding to a court order. They are, at most, collateral to the case at this point.

(2) There has been no previous public access to the U.S. Capitol Police CCTV videos.

(3) Mr. Torrens objects to public disclosure as to all videos – open source and CCTV. The government objects to public disclosure of the CCTV videos. Co-defendant Griffith has already pleaded guilty. No videos were required to be publicly disseminated as part of his plea colloquy, and this issue appears not to have been raised as part of his proceeding. Nor has Mr. Griffith or the other two co-defendants, each of whom is still pending trial,[1] been provided an opportunity to lodge an objection to public dissemination of any of the videos.

(4) Congress and the U.S. Capitol Police have a strong interest in their videos and non-disclosure.

(5) As for both the open source and CCTV videos, there is a strong "possibility of prejudice" to Mr. Torrens. He already lost his job the first time there was public attention given to videos of his January 6, 2021 attendance and actions. Since then, he has obtained a new job *and* he has obtained 50% custody of his young daughter. Experience has already shown the very real possibility of the collateral consequence of loss of employment and income. Social media

---

[1] "[B]road dissemination of critical evidence that may be used in *future* jury trials requires more delicate balancing." *In re Press and Pub. Access to Video Exhibits in the Capitol Cases*, 2021 U.S. Dist. LEXIS 92101 *15 (D.D.C. May 14, 2021) (Howell, C.J.) (emphasis in original). The "how and when" of public access, *see Leopold*, 964 F.3d at 1133, can also implicate a potential future jury trial of Mr. Torrens if the Court undertakes review of the records and refuses to accept the plea, re-setting the case on a jury trial track.

3

attention and opprobrium that could come with disclosure risk Mr. Torrens losing his current job. The risk of loss of his current job both risks his losing a way to support himself and his daughter and, if unemployed, risks causing a change in home circumstances that could result in family court litigation and action concerning a re-adjustment of the child custody arrangement.

(6) Finally, the videos were produced to the Court not for any litigation purpose by either party but rather as an officer-of-the-court ministerial response to a court order.

The *Hubbard* factors balance against public dissemination.[2]

*Conclusion*

In prior litigation in this Court, the government had submitted discovery videos as exhibits to argue in favor of preventive detention, and the Court had considered those videos. Under such circumstances, the Court concluded that the presumption of public access to judicial records applied. The factual circumstances here are very different. Here, the records were supplied to the Court for a ministerial, not adversarial reason. Neither party seeks to introduce

---

[2] In its August 17, 2021 Minute Order, the Court directed counsel to address that "the risk of 'annoyance and criticism' is generally insufficient to rebut the presumption of public access to judicial proceedings. *See In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019)." Mr. Torrens accepts that his conduct is due public criticism. He has been publicly criticized. He may be publicly criticized at the time of his guilty plea. He will be publicly criticized at the time of his sentencing. But to disseminate the videos at the time of his guilty plea, where similar videos were not disseminated at the time of Mr. Griffith's guilty plea (or those of under U.S. Capitol Cases defendants in other cases at the time of their pleas) is disparate treatment that can unfairly prejudice Mr. Torrens by seemingly highlighting for broader attention *his* plea and conduct over that of others. Additionally, while a decision to avoid criticism may alone be an insufficient basis to assert an interest, *id.*, the D.C. Circuit in *In re Sealed Case* adds that "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties" is a sufficient basis, *id.* Here, public dissemination of the discovery videos poses a risk of retaliatory harm to Mr. Torrens by the risk of loss of his job and custody role with his daughter and "even more critically" a risk of mental harm to his young daughter, an innocent non-party, should public dissemination result in a surge of social media attention to Mr. Torrens plea proceeding and conduct on January 6, 2021.

the videos at the change of plea hearing. No third party has sought access. Importantly, unlike in *In re Press & Pub. Access to Video Exhibits in the Capitol Cases*, there has not been full briefing by anyone. Under such circumstances without a request for release by the parties or some member of the public where no controversy has been presented to the Court[3] and where the has not been full briefing on the matter, the defense believes the Court should not order the discovery videos and therefore respectfully objects to public dissemination of the discovery videos.

/s/ EDWARD J. UNGVARSKY
EDWARD J. UNGVARSKY
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
Office: (571) 207-9710
Cell: (202) 409-2084
Fax: (571) 777-9933
ed@ungvarskylaw.com

Counsel for Eric Torrens

---

[3] "'The premise of our adversarial system is that . . . [courts are] arbiters of legal questions presented and argued by the parties before them.'" *MetLife, Inc.*, 865 F.3d at 667 (quoting *Carducci v. Regan*, 714 F.3d 171, 177 (D.C. Cir. 1983)).