UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-204 |
| | : | |
| MATTHEW BLEDSOE, | : | Honorable Chief Judge Beryl A. Howell |
| ERIC CHASE TORRENS, | : | |
| BLAKE AUSTIN REED, and | : | |
| JACK JESSE GRIFFITH, | : | |
| also known as "Juan Bibiano," | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' EXPLANATION OF ITS POSITION
### AS TO RELEASE OF VIDEO EVIDENCE RE: ERIC CHASE TORRENS PLEA

The Government submits this explanation of its position in response to the Court's August 16, 2021 Minute Order. Videos 4, 6, 7, 8, and 9 ("Videos")—as identified in the Government's Status Report and Position Regarding Public Release of Video (ECF No. 67)—are not "judicial records" as described in *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017), and should not be publicly released. Indeed, the Government has taken steps to protect the Videos due to their sensitive nature. It provided them in discovery only under a protective order with a "Highly Sensitive" designation and to the Court after the Court ordered it to do so in its August 15, 2021 Minute Order. The Government has not sought to admit these videos as exhibits in any proceeding to litigate an issue or controversy in this case and does not seek to do so now. To the extent that the Court was not satisfied with the factual proffer as submitted with the proposed plea agreement, the Government requests the opportunity to supplement the factual proffer and the Government believes it can do so without relying on the Videos. *See* F. R. Crim. P. 11(b)(3).

As an alternative means of relief, if the Court decides to rely on the Videos and ultimately

accept the proposed plea agreement based on what is contained in the Videos, the Government respectfully requests that the Videos not be released publicly at least until the guilty plea is accepted and entered.

    **A. The Videos Contain Security Information Which the Government Seeks to Protect.**

A protective order, standing alone, does not prevent the release of material to the public. The protective order is only one of the steps the government has taken to protect U.S. Capitol closed circuit video ("CCV") footage. When it comes to public release, the Government has undertaken a case-by-case analysis of which pieces of footage are necessary to litigate issues and controversies in each individual case, while balancing its interest in the safety of the Capitol and those who work there.

The Videos depict the interior of the U.S. Capitol building from cameras near the Senate Wing Door and the Crypt. Consistent with the Government's position regarding CCV in cases related to the events of January 6, 2021, the government designated the videos "Highly Sensitive" pursuant to the protective order entered in this case. Protective Orders, ECF Nos. 41, 42, 44, 49. In seeking a protective order in other cases, the government submitted the Declaration of the General Counsel of the U.S. Capitol Police. *See United States v. Nordean*, Case No. 21-cr-175, ECF 92-1, pp. 1-20 (Declaration of Thomas DiBiase). That declaration describes strict limitations on the disclosure of CCV and the "significant concerns" of the U.S. Capitol Police ("USCP") that "unfettered access" to CCV presents a security risk. *Id.* at p. 6, ¶ 14.

The USCP security concerns weigh in favor of restricting the disclosure of CCV generally, including the Videos at issue here. Indeed, the Videos here are particularly sensitive because they depict the interior—as opposed to the exterior—of the U.S. Capitol and thus revealing information

less likely to be obtained through other means.

This Video is part of a larger group of videos in these cases which could be aggregated to reveal non-public information about "entry and exit points, office locations, and the relation of the crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." *United States v. Nordean*, Case No. 21-cr-175, ECF 92-1, pp. 6-7 ¶ 16 (Declaration of Thomas DiBiase). Where disclosure of one video may not present a significant security threat, the U.S. Capitol Police has a larger legitimate interest in restricting the disclosure of individual videos in an effort to avoid "unfettered access" to CCV that may indeed give rise to a significant threat to the building and those victimized by the events of January 6, 2021. *See id.*

The Government has sought to strike the right balance, ensuring that restrictions on disclosure are sufficient to address the legitimate security concerns with the least restrictive means while still adequately meeting its discovery obligations and litigating issues and controversies in individual cases as required. As part of its attempt to balance these competing interests, the government has made CCV public in requests for public assistance in identifying suspects involved in the January 6 attack. The Government has not objected to the disclosure of certain CCV that was played in open court in detention or other court hearings, or where, in the context of a particular case, the Government has determined that the interests served by disclosure outweigh the security risks, even considering the overarching risk presented by the potential aggregation of publicly available CCV.

### B. Release of Certain CCV During Litigation Does Not Negate the Ongoing Concerns Regarding the Aggregate Release of CCV

The public release of select clips of CCV—regardless of the nature of that particular CCV or the circumstances in which it was disclosed—does not cause the Government's interest in

3

protecting all other CCV to vanish. The security concerns outlined in the DiBiase Declaration remain as to CCV generally and particularly so for CCV showing the interior of the U.S. Capitol. Here, in light of the nature of the videos and the current posture of this case, which is pending acceptance of a plea agreement, there is not an issue or controversy which requires litigation and there is no other consideration that outweighs the legitimate security concerns raised by the USCP.

The Government respectfully requests that the Court refrain from public disclosure of the Videos. Should the Court accept the plea agreement on August 19, 2021, the public will have access to the written documentation of the events and criminal conduct depicted in the Videos. The Videos are duplicative and nothing in the Videos will be required to provide a factual basis for the elements of the crime to which Defendant Torrens seeks to plead guilty.

### C. The Videos Are Not Judicial Records.

As the case currently stands, the videos submitted to the Court in response to its Order directing the government to submit the videos, should not be considered judicial records in this case and, thus, the common-law right of public access to judicial records does not apply. *See United States v. Hubbard*, 650 F.2d 293, 314-15 (D.C. Cir. 1980) (discussing "this country's common law tradition of public access to records of a judicial proceeding"). "[W]hether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017) (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)). A document filed with a court that "can affect a court's decisionmaking process," "which the parties hope to influence the court," and "upon which the court must base its decision" is a judicial record. *Id*.

The cases referenced in the Court's August 16, 2021 Minute Order, *In re Press & Public*

*Access to Video Exs. In Capitol Riot Cases*, 2021 WL 1946378 (D.D.C. May 14, 2021) and *United States v. Jackson*, Case No. 21-mj-115, Mem. Op. & Order, ECF No. 24, involve scenarios in which the Government submitted videos to the court proactively, as part of its advocacy. The video exhibits from *In re Press & Public Access to Video Exs. In Capitol Riot Cases* were all submitted by the Government to the court either before or during detention hearings to advocate that a Capitol Riot defendant be detained. *In re Press & Public Access to Video Exs. In Capitol Riot Cases*, 2021 WL 1946378 at *4. As the Court noted in that case, the video exhibits were relied upon in making detention decisions, therefore they qualified as a judicial records—triggering presumptive public and media access. *Id.* Likewise, in *Jackson*, the Government submitted the video exhibits to the magistrate judge to seek detention of a Capitol Riot defendant. *Jackson*, Case No. 21-mj-115, Mem. Op. & Order, ECF No. 24 at 2. Not only were the *Jackson* video exhibits submitted to the Court, the Government played them during the detention hearing in open court. *Id.*

There are critical differences between the two above-mentioned cases and this one. First, the procedural posture of the submissions differ. At the detention hearings, the Government sought to convince a judge that a defendant was dangerous, and the videos were submitted for the persuasive effect that served an adjudicatory function. In this case, the parties have agreed in advance to a proposed statement of offense that provides a sufficient basis for the Court to accept the plea agreement the parties negotiated. The parties planned to verbally confirm the factual basis for the plea agreement on the record. The parties did not intend to produce any video or other exhibits to the Court since a plea is not a proceeding that typically involves advocacy.

The Government submitted these videos to comply with the August 15, 2021 Minute Order, not to convince the Court of its position on some issue or controversy brought to the court for

adjudication. This Court previously accepted Defendant Jack Jesse Griffith's plea with a similar factual submission and the defendant's testimony at the plea hearing. Griffith Plea Agreement & Statement of Offense, ECF Nos. 62-63. Co-Defendants Griffith and Torrens are similarly situated. They engaged in the same criminal activity on January 6, 2021, were both charged with misdemeanors, and were both offered misdemeanor plea offers from the Government. The videos show Griffith and Torrens moving together during their time on the Capitol grounds and inside the Capitol.

If the Court finds that the existing factual proffer provided by the parties is adequate to support the guilty plea, as it did in Griffith's case, the Court should then accept the plea under Rule 11(b)(3) of the Federal Rules of Criminal Procedure. In that situation, the Court would not have relied upon the videos at issue, and the parties have not sought to incorporate them into the factual proffer currently under review. The government simply provided them in direct response to a Court order. Therefore, these videos would not be considered judicial records as the Court would not have relied upon them in accepting the guilty plea. *See United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("This document has played no role in any adjudicatory function."). "[W]ith nothing judicial to record, there are no judicial records." *Id*. at 162.

In conclusion, the Government respectfully requests that the Court not disclose the Videos to the public at this time. Alternatively, if the Court chooses to rely on the Videos to find a sufficient factual basis for the plea, the Videos should not be disclosed until the guilty plea is accepted and entered, which is the point at which they would become judicial records. *See Id*.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        DC Bar No. 415793

By:    /s/ *Mitra Jafary-Hariri*
        MITRA JAFARY-HARIRI
        Assistant United States Attorney, Detailee
        MI Bar No. P74460
        211 W. Fort Street, Suite 2001, Detroit, MI 48226
        mitra.jafary-hariri@usdoj.gov, (313) 226-9632

        /s/ *Jamie Carter*
        JAMIE CARTER
        Assistant United States Attorney
        Bar No. 1027970
        555 Fourth Street, N.W.
        Washington, DC 20530
        Jamie.Carter@usdoj.gov
        (202) 252-6741