UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-204 |
| | : | |
| MATTHEW BLEDSOE, | : | Honorable Chief Judge Beryl A. Howell |
| ERIC CHASE TORRENS, | : | |
| BLAKE AUSTIN REED, and | : | |
| JACK JESSE GRIFFITH, | : | |
| also known as "Juan Bibiano," | : | |
| | : | |
| Defendants. | : | |

### UNITED STATES' FURTHER EXPLANATION OF ITS POSITION AS TO RELEASE OF VIDEO EVIDENCE RE: ERIC CHASE TORRENS PLEA

In response to the Court's September 1, 2021 Minute Order, the Government submits this further explanation of its position regarding the public release of video evidence. In particular, the Government seeks to address the narrow issue of how the specific videos in this case could "reveal non-public information about entry and exit points, office locations, and the relation of the crucial chambers and officers (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." Sept. 1, 2021 Minute Order. As set forth below, public release of video evidence submitted pursuant to the Court's order, would reveal non-public information, and compromise the security of the United States Capitol and those who work there.

In the Government's prior filing, ECF No. 70, the Government presented this argument based on its reliance on the DiBiase Declaration. ECF. No. 70, at 3 (citing *United States v. Nordean*, Case No. 21-cr-175, ECF 92-1, pp. 6-7 ¶ 16 (Declaration of Thomas DiBiase)). That portion of the DiBiase Declaration relies on the mosaic theory of intelligence gathering. The release of video from the U.S. Capitol CCV system, in this matter and others, undermines the security of the U.S. Capitol. The public release of a significant volume of footage provides a road-

map for those who may seek to repeat the events of January 6th.

The videos provided to the Court, per its order in this case, show an entrance into the Capitol building and entry and exit points into and out of the Crypt. None of the clips were played in open court. In all, the five clips depict approximately 33 minutes of footage from inside the Capitol during the riot. This footage, when combined with other footage from nearby cameras, could be used to track individual rioters moving through the building thereby creating a visual pathway which other bad-actors could use in planning their breach point and pathway for future attacks.[1] The large number of cases (now more than 500 defendants and likely more to come) increases the chance for bad-actors to use video clips like these even where the individual video clips on their own may not be problematic.

The volume of U.S. Capitol Police (USCP) video at issue in this case and the different perspectives and capabilities of the cameras at issue raise additional security issues. Based on representations made by the U.S. Capitol Police, the government has learned that different cameras have different technological capabilities. For example, some cameras have the ability to pan, tilt and zoom (PTZ).[2] Other cameras do not have that capability.

---

[1] The ongoing threat to the U.S. Capitol is not hypothetical. The USCP and their law enforcement partners are actively preparing for a large-scale rally, "Justice for J6," scheduled for September 18th at Union Square. *See* https://www.washingtonpost.com/dc-md-va/2021/09/02/justice-j6-rally-capitol-riot/ (last accessed September 3, 2021). The group organizing the rally is promoting the idea that the hundreds of people charged in the January 6 insurrection are political prisoners. *See id.* Congress is currently scheduled to be in session during that time.

[2] *See* https://en.wikipedia.org/wiki/Pan%E2%80%93tilt%E2%80%93zoom_camera (last accessed September 3, 2021).

The USCP videos at issue here come from four different cameras and include more than thirty minutes of footage, far more than the government typically offers in public court hearings. By studying more than half-an-hour of footage from four different cameras, would-be bad-actors would learn valuable information about the capabilities of the cameras, and by extension, the capabilities of the U.S. Capitol's closed-circuit video (CCV) system. For example, the footage depicted in Videos 6 and 8 show substantially different perspectives and capabilities than the footage depicted in Videos 4, 7 and 9. Videos 4 and 9 capture footage that is substantially different in quality than Video 7. By viewing all of the footage at issue here, combined with footage that has been made public in other cases, potential bad-actors would gain valuable knowledge about the capabilities of the U.S. Capitol's CCV system, compromising the security of the building and those who work there.

Finally, the cameras themselves also reveal how law enforcement responded to the attack, revealing police tactics and capabilities that could enable the next set of rioters to change their pattern of attack and their weaponry to combat such tactics and overcome law enforcement capabilities. This is particularly true when the smaller confines of the Capitol require officers to use different combat and crowd control techniques than are used exterior to the building.

For all of the reasons articulated herein, and in the government's prior pleadings, the CCV footage (Videos 4, 5, 7, 8 and 9) should be sealed.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        DC Bar No. 415793

By:   /s/ *Mitra Jafary-Hariri*
      MITRA JAFARY-HARIRI
      Assistant United States Attorney, Detailee
      MI Bar No. P74460
      211 W. Fort Street, Suite 2001, Detroit, MI 48226
      mitra.jafary-hariri@usdoj.gov, (313) 226-9632

      /s/ *Jamie Carter*
      JAMIE CARTER
      Assistant United States Attorney
      Bar No. 1027970
      555 Fourth Street, N.W.
      Washington, DC 20530
      Jamie.Carter@usdoj.gov
      (202) 252-6741