UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :

      v.                                :      1:21-CR-204-BAH

ERIC CHASE TORRENS                :

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

The government requests that the Court impose a sentence of two weeks of incarceration and $500 in restitution.[1] The defense respectfully disagrees with the government's request, which does not adequately account for Eric Torrens' history and character and which, in incarcerating him, would be an unnecessary, unwarranted disparate sentence from others who were convicted of parading, demonstrating, or picketing in a Capitol Building with substantial aggravating conduct by those defendants that is absent here. Counsel respectfully asks the Court to impose a sentence of one year of probation, with specific conditions that include community service, drug testing and monitoring as required by probation, and a period of home confinement if deemed necessary by the Court, together with $500 in restitution.[2] Such a sentence is a reasonable, sufficient, and no more than necessary to provide accountability for Mr. Torrens' offense and to protect the community.

---

[1] Gov't Sentencing Memo at 1.
[2] Mr. Torrens agreed to $500 restitution as part of his plea. He both agrees with the government's request and its analysis at pages 15-21.

1

I. **A probationary sentence is appropriate**.

A probationary sentence is appropriate in this case. Such a sentence serves the Section 3553(a) factors.

The government contends that "all of the Section 3553(a) factors weigh in favor of incarceration."[3] The government further contends, "A sentence of probation or home confinement would be insufficient here," given the need for the sentence to reflect the seriousness of the offense and promote respect for the law.[4] In avoiding disparate sentences for similar conduct, the government acknowledges that "each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment."[5] Despite its acknowledgement that some cases merit a probationary sentence, the government rejects a probationary sentence in principle but for a handful of so-called fast-tracked plea cases.[6] For "those who trespassed, but engaged in less serious aggravating factors," the government contends that they "deserve a sentence more in line with minor incarceration or home confinement."[7] Mr. Torrens trespassed. His case is without aggravating factors, never mind less serious ones.[8] Even under the government's matrix, home detention is sufficient. And counsel recommends supervised probation, absent home detention, as the proper sentence.

---

[3] *Id.* at 8.
[4] *Id.* at 12.
[5] *Id.* at 14.
[6] *Id.* at 14 n.4.
[7] *Id.* at 15.
[8] Undersigned counsel appreciates and commends the government for its full recitation of Mr. Torrens' statements to the FBI. Mr. Torrens said he thought the attacks on the police were "f-ed up." He said he thought the crowd, not the police, were antagonizing and trying to start a riot. He said he left the Capitol when his commonsense kicked in. He praised the police as helpful to him and others as he left.
   Once Mr. Torrens and Mr. Griffith were outside, Mr. Griffith kept saying they should return inside. Mr. Torrens had enough, dissuaded Mr. Griffith and said that they should just leave. And they did.

The nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law merit Mr. Torrens' arrest, prosecution, and conviction. Given his specific conduct, however, they do not merit a period of incarceration. Mr. Torrens' participation in the mob at the Capitol on January 6th is serious; however, the crime to which he is being sentenced is a Class B petty misdemeanor that under normal circumstances does not result in jail time.[9] Consequently, the majority of the individuals sentenced to the same January 6 offense have received probationary or home confinement sentences, not incarceration. These non-incarceration sentences make sense for those persons like Mr. Torrens whose entry to the Capitol following the crowd was short in duration. If he had gone to the Capitol, walked around the outside, and stopped himself before going in, he would not even have been charged with any offense. He *did* enter the Capitol. Those 10 minutes of walking to the Crypt and reversing course the same way out led him to get charged, get convicted, and be sentenced. Jail time – particularly in a time of COVID-19 where inmates are both at greater risk of infection and held in restrictive quarantine isolation status for 10-14 days – risks multiple unintended collateral effects on stability in his life and is greater than necessary.

The consideration of Mr. Torrens' background and character clearly militates strongly against a jail sentence. Courts sentence the offender, not the offense. Mr. Torrens has no prior

---

[9] Those persons who commit the offense of parading inside the U.S. Capitol as *non-violent* protest and demonstration never see a courthouse. They are either removed with a warning or given a notice that they can post-and-forfeit $50 for dismissal of the charge. *See, e.g.,* Religious leaders arrested in Capitol while demanding restoration of Voting Rights Act – ThinkProgress.(Capitol Rotunda); *see also* Revs. Jesse Jackson, William Barber Arrested at Capitol Protest Aimed at Joe Manchin, Mitch McConnell (msn.com); Jane Fonda, Sam Waterston arrested at U.S. Capitol climate protest (nbcnews.com). Those factual circumstances are very different, of course, but they show that the offense itself is one that typically does not even warrant arrest, never mind prosecution, conviction, and sentence. The exceptional circumstances of Mr. Torrens' offense have already resulted in exceptional consequences.

3

record, works full-time, takes care of his daughter, suffers anxiety, proactively addresses his own anxiety-induced relapse concerns by participating with an addiction clinic, is a young, immature adult, benefits from family support, gives community service, and has expressed deep and true contrition, remorse, and shame. The imposition of a jail sentence does not yield specific deterrence as to Mr. Torrens. To the contrary, court supervision – both the 9 months that he has been on pretrial supervision and a probationary sentence, with prison time suspended, is unquestionably the best form of specific deterrence.

General deterrence does not require a jail sentence in this case. A message that even the least culpable must be separated from their family and jailed will disincentive future acceptances of responsibility among the hundreds of misdemeanor defendants still on the docket. A jail sentence here will not deter violent acts against the government in the future by those who are angrily minded to distrust the government and the courts. To the contrary, it will have the counter, unintended effect of feeding conspiracy theories and heightening opposition to democratic institutions and the rule of law. To advance the aim of general deterrence of others, history has shown that the best way to avoid reciprocal recriminations is to avoid perceived retribution. Sending a message of punishment, as the government suggests, will result not in deterrence but in resentment for those resistant to the well-intended message and the conscientious messenger. Finally, the general deterrence argument disregards that the government's request is to encage a particular human being in order to influence a hypothetical class of persons, without any evidence that others will in fact be influenced as the government wishes them to be.

The government cites three cases in which *the government itself* requested probation.[10] It is impossible to square the government's request of prison time for Mr. Torrens with those recommendations. The conduct of each of those defendants and their post-January 6 conduct were far more aggravating than that of Mr. Torrens.[11] In short, Valerie Elaine Ehrke, whose social media profile identified with QAnon, *intended* to storm the Capitol. She had returned to her hotel after attending the Trump rally, saw the breach of the Capitol on TV, and elected to leave the hotel to join the mob to enter the Capitol. Inside the Capitol, officers tear-gassed and pushed her out. On September 17, 2021, Ms. Ehrke was sentenced to three years of probation with the conditions of 120 hours of community service and the requirement that she stay out of the District of Columbia.

Anna Morgan-Lloyd and Donna Sue Bissey went to the Trump rally together. They followed the crowd to the Capitol. Once there, Ms. Morgan-Lloyd rejoiced in being one of "the first 50 people" to have "stormed" in the Capitol. Ms. Morgan-Lloyd was sentenced to three years of probation, with 100 hours of community service. On social media, Ms. Bissey touted that their "breach" was the first of its magnitude since the British in 1812, and she posted photographs documenting the crowd's damage and theft of property from the Speaker's Office. She aggrandized that she had "no shame." Based upon specific facts, for this unrepentant, joyous participant in acts of violence, Judge Chutkan exceeded the government's request and sentenced Ms. Bissey to 14 days of incarceration and 60 hours of community service on October 12, 2021.

---

[10] *See id.* at 14, n.4 ("Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in United States v. Anna Morgan-Lloyd, 1:21-cr-00164(RCL); United States v. Valerie Elaine Ehrke, 1:21-cr-00097(PFF); and United States v. Donna Sue Bissey, 1:21-cr-00165 (TSC)).
[11] The details are contained in the statements of offenses and the government sentencing memos for each of those defendants, which are attached cumulatively as Exhibit 1.

While the government suggests that its request of probationary sentences for these defendants is explained by "early" pleas, the timing of their pleas alone cannot explain the obvious disparate sentencing treatment. Mr. Torrens was offered a plea on July 14, 2021 and accepted it on July 28, 2021. Ms. Bissey entered her plea *the next day*, on July 29, 2021. Ms. Morgan-Lloyd and Ms. Ehrke entered their pleas on June 23 and June 30, respectively. A month's difference in time is too short a period of time as to warrant an incarceration sentence for a defendant whose intent and conduct were demonstrably less serious and offensive and whose remorse is greater by orders of magnitude.

In any event, these three women's cases that the government identifies as examples of *its* recommending probation are just a sub-set of more aggravated and/or similar cases in which for January 6 defendants convicted of the same offense as Mr. Torrens, in which the government recommended, and the District Judge imposed, non-lacerative, community-based sentences. Counsel provides an illustrative list in case number order of sentencing outcomes of 40 U.S.C. § 5104(e)(2)(G) defendants who shared Mr. Torrens' facts of traveling to Washington, D.C. for a lawful rally, going to the Capitol where they had to have observed the civil disturbance, entered the building without permission, spent time in the building, and left without themselves engaging in any violence or causing any damage. Some, but not all, of these defendants expressed contrition. Strikingly, while these non-incarcerative cases share the baseline conduct of Mr. Torrens, each also demonstrates aggravating conduct well beyond that of Mr. Torrens.[12]

---

[12] While quoting *Mazzocco*, 21-CR-54 and *Hodgkins*, 21-CR-188 for the proposition that the January 6 event was a serious one and that probation is not a default sentence, the government commendably does not ask the Court to rely upon the sentences in those cases in imposing an incarceration sentence for Mr. Torrens as each of those defendants engaged in obstruction of justice in some fashion. In *Mazzocco*, the defendant had posted, "the capital [sic] is ours," among other offending conduct, such as entry within the Spouse's Lounge. More so, he obstructed the investigation. When he learned that his social media photographs and comments could draw law

6

- *Thomas Gallgher*, 21-CR-41:[13] Mr. Gallgher carried a chair down a stairwell in the direction of police officers who had retreated after chairs had been thrown at them, faced off with a line of officers, and later appeared to admonish another person to put down a chair. Mr. Gallgher did not leave the building when instructed and was arrested inside the Capitol. Mr. Gallgher expressed contrition after the event. On October 13, 2021, Mr. Gallgher was sentenced to two years of probation, with conditions, restitution, and no fine.

- *Eliel Rosa*, 1:21-CR-68:[14] Mr. Rosa had attended the Trump rally, returned to his hotel room, and, learning of the events at the Capitol, elected to leave his room to go to the Capitol. Mr. Rosa went to the Capitol "after learning that Vice President Pence was not going to take action." Mr. Rosa consciously and thoughtfully *intended* to join the violent protest and unlawfully breach the Capitol. He entered the Capitol amidst the chaos and travelled throughout it for about 20 minutes, reaching two separate doors to the House Chamber. Mr. Rosa turned himself in to law enforcement voluntarily. On October 13, 2021, Mr. Rosa was sentenced to 1 year of probation, with 100 hours of community service.

---

enforcement's attention, he deleted and destroyed the evidence. And although wearing a body-worn camera on January 6, he claimed to the FBI on January 17 that he did not know where it was. In *Hodgkins*, Judge Moss sentenced the defendant for the felony conviction of obstruction of an official proceeding.

[13] The signed statement of offense and the government's October 5, 2021 sentencing memorandum are attached as Exhibit 2. The government requested "one month of home confinement, a probationary term of three years, 60 hours of community service, a fine, and $500 in restitution."

[14] The signed statement of offense and the government's sentencing memorandum are attached as Exhibit 3. On October 4, 2021, the government recommended "one month of home confinement, a probationary term of three years, 60 hours of community service, and $500 in restitution."

- *Andrew Bennett*, No. 21-CR-227:[15] Two days prior to January 6th, Mr. Bennett posted on his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom." Mr. Bennett personally observed and videotaped other persons' engaging in physical violence toward police officers. Mr. Bennett was inside the Capitol for almost 30 minutes, wearing his Proud Boys ballcap. He both told others not to fight with officers and taped officers being outnumbered and falling back. He also videotaped as other demonstrators attempted to breach the doors near the Speaker's lobby. Mr. Bennett was notably ambiguous as to contrition for his actions. On October 1, 2021, Mr. Bennet was sentenced to two years of probation, with the first three months to be served on home confinement and 80 hours of community service.

- *Joshua and Jessica Bustle*, 21-CR-238:[16] After Ms. Bustle had entered the Capitol for 20 minutes, she called Vice President Pence a "traitor" on her social media page and confirmed "we stormed the Capitol." After leaving the Capitol, Mrs. Bustle wrote, "We need a Revolution!" Mr. Bustle was with his wife throughout the time. When they reached the Rotunda, they were corralled by police officers and forced to leave the Rotunda, eventually exiting the building. He did not have other aggravating conduct. Mr. Bustle is the defendant whose limited conduct most closely tracks Mr. Torrens. On August 4, 2021, Judge Hogan sentenced Mr. Bustle to serve 30 days of

---

[15] The signed statement of offense and the government's sentencing memorandum are attached as Exhibit 4. On September 17, 2021, the government recommended "three months of home confinement, a probation term of three years, 60 hours of community service, and $500 in restitution."

[16] The signed statement of offense and the government's sentencing memoranda are attached as Exhibit 5. The government recommended home confinement, probation, and community service for each.

> home detention and two years of supervised probation, and Mrs. Bustle to serve 60 days of home detention and two years of supervised probation. Each was ordered to complete 40 hours of community service.
>
> - *Danielle Doyle*, 1:21-CR-324:[17] Ms. Doyle entered the Capitol through a broken window, stayed inside for approximately 24 minutes, photographed others including one holding a sign, "The Storm is Here," and continued to write proudly about her presence and actions several weeks after January 6th. On October 2, 2021, Judge McFadden engaged in his own disparate sentence analysis and sentenced her to *2 months* of probation and a $3000 fine.

Of these nine cases, each with offense facts very similar or worse than those of Mr. Torrens, eight of the defendants received non-incarceration sentences and one, with a markedly worse sentencing posture, received 14 days in jail. While every case is different, this Court seeks to avoid unwarranted sentencing disparities. Counsel does reference the facts of the above cases to minimize the seriousness of the January 6, 2021 riot, Mr. Torrens's conduct in entering the Capitol, and the conduct of the above individuals. The offenses are serious. Being convicted of a crime is serious. Being put on probation is serious. Having to follow conditions of probation is serious. Having to limit activities under a condition of home detention is very serious. A sentence that deliberately avoids immediate incarceration and the known and potential incidents associated with it is serious – and reasonable.[18]

---

[17] The signed statement of offense and the government's sentencing memorandum are attached as Exhibit 6. The government recommended home confinement, probation, and community service.

[18] If the Court does impose an incarceration sentence, undersigned counsel asks that the Court order that Mr. Torrens may self-surrender at a specific date to a local facility in the Middle District of Tennessee to address child care and work obligations. Mr. Torrens further requests that the Court then also recommend that Mr. Torrens serve his sentence at a facility in the Middle

The imposition of a sentence of probation is neither light nor lenient; it is true and proper. It also is a far better way to influence and monitor a person's behavior. Mr. Torrens has already proven himself under court supervision, and he will succeed under probation. Accordingly, this Court should sentence him to one year of probation, with special conditions that include community service, drug testing and monitoring as required by probation, and a period of home confinement if the Court deems such community-based detention necessary and appropriate. Mr. Torrens requests that probation is transferred to the Middle District of Tennessee.

Respectfully Submitted,

/s/ EDWARD J. UNGVARSKY
Edward J. Ungvarsky
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
Office - 571 207 9710
Cellular – 202 409 2084
ed@ungvarskylaw.com
Counsel for Eric Chase Torrens

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Response was served ECF to the government and all registered recipients on this 20th day of October, 2021.

/s/ EDWARD J. UNGVARSKY
Edward Ungvarsky

---

District of Tennessee. Undersigned counsel is investigating BOP facilities and private facilities that have a contract with the USMS in Tennessee.