## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**          :

              **v.**          :          **1:21-CR-204-BAH**

**ERIC CHASE TORRENS**          :

### DEFENDANT'S SUPPLEMENTAL RESPONSE TO GOVERNMENT'S REPLY TO RESPONSE FILED BY ERIC CHASE TORRENS (ECF 117)

This supplemental response addresses the government's ill-considered argument that the federal criminal sentencing code permits judges to impose both a sentence of incarceration and a sentence of probation for petty offenses, including the one that Mr. Torrens's pleaded guilty to and is scheduled to be sentenced for on Friday. This supplemental response also addresses the government's interpretation of 18 U.S.C. § 3563(b)(10). While for a *non-petty offense*, confinement is available to be imposed as a condition of probation so long as it is intermittent, intermittent confinement is inappropriate in Mr. Torrens' case. In addition to raising legal and constitutional issues that should be avoided, intermittent confinement would specifically disrupt Mr. Torrens' ability to rehabilitate himself on probation with employment, community service, and custodial care of his daughter and is greater than necessary for the purposes of 18 U.S.C. § 3553(a).[1]

---

[1] This reply is being filed at the earliest opportunity. Undersigned counsel injured his back and was largely unable to work in the office or at a computer from October 23-26, 2021. The brief counsel filed over the weekend was drafted before the injury.

**A. 18 U.S.C. § 3561(a)(3) Does Not Authorize Sentences of Both Imprisonment and Probation for One Single Petty Offense**

The government argues that § 3561(a)(3) authorizes a court to impose a sentence of probation and a sentence of imprisonment at the same time for one single petty offense. ECF 117, Gov't Reply at 1. The government is incorrect. *First*, the government's interpretation of § 3561(a)(3) irreconcilably conflicts with § 3551(b). *Second*, § 3561(a)(3) does not explicitly authorize the imposition of such dual sentences. *Third*, the government's interpretation raises constitutional concerns.

1. The government's interpretation cannot be reconciled with § 3551(b)

The government's interpretation of § 3561 cannot be reconciled with the related statutory provision of § 3551(b). To start, the government cannot dispute that § 3551(b) provides that probation and imprisonment are to be mutually exclusive for the same offense. *See* Gov't Reply at 2. Next, § 3551(b) specifically refers to "an offense," not as the government suggests, "the same sentencing hearing." *Id.* The "general rule" in § 3551(b) applies to every "offense." It is § 3563(a)(3) that contains (and has always contained) the prohibition with respect to different offenses in the same sentencing hearing. *See* Gov't Reply at 3-4 (discussing "flat statutory prohibition" in § 3561(a)(3)" recognized in *Anderson*).

Furthermore, the government's half-hearted attempt to harmonize § 3551(b) with its desired reading of § 3561(a)(3) by citation to § 3551*(a)* is unavailing. Gov't Reply at 2. Section 3551(a) provides that "[e]xcept as otherwise specifically provided, a person found guilty of an offense" must be sentenced "in accordance with the provisions of this chapter [chapter 227] so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent they are applicable in light of all the circumstances of the case."  It is undisputed that Mr. Torrens must be sentenced "in accordance with the provisions of" chapter 227 to meet the

purposes of sentencing listed in § 3553(a)(2)(A) through (D). Nothing "otherwise specifically provide[s]" that defendants sentenced for violating the Parading, Picketing, and Demonstrating statute should be sentenced pursuant to sentencing provisions of some other chapter "so as to achieve" some other purpose. Section 3561(a)(3) does not provide "otherwise," nor does it void or somehow override the unambiguous prohibition barring a sentence of both imprisonment and probation for "an" (i.e., one single) "offense" in § 3551(b).

      2.   <u>The government's interpretation misreads § 3561(a)(3)</u>

Even if the government' reading of § 3561(a)(3) did not irreconcilably conflict with § 3551(b), the government's reading of the plain language, *see* Gov't Reply at 4-5, is nonetheless incorrect. Contrary to the government's suggestion, reading the phrase "that is not a petty offense" to modify only "a different offense" *is* the natural reading of Section 3561(a)(3). And it is the only reading of the statute that is consistent with the sentencing scheme that the provision is about limitations on terms of probations, not, as the government would have it, an expansion of when probation and incarceration can be given.

The government fails to fully and properly cite Scalia & Gardner. Gov't Reply at 4 (citing Antonin Scalia & Brian Gardner, Reading Law: The Interpretation of Legal Texts 148-49 (2012). "*With postpositive modifiers, the insertion of a determiner before the second item tends to cut off the modifying phrase so that its backward reach is limited*." Antonin Scalia & Brian Gardner, Reading Law: The Interpretation of Legal Texts 149 (2012) (emphasis added). The authors give comparative examples:

- "*Institutions or societies that are charitable in nature* (the institutions as well as the societies must be charitable)"

as compared to

- "*An institution or a society that is charitable in nature* (any institution probably qualifies, not just a charitable one)."

*Id.* at 348-49. The statute here – "the defendant is sentenced at the same time to a term of imprisonment for the same or ***a*** different offense that is not a petty offense" – is like the second example, where the qualifier applies only to the second noun in the string. The insertion of the determiner **"a"** cuts off the reach of the postpositive modifier.

The government's misreading of the postpositive modifier canon carries through in its failure to discuss *United States v. Pritchett*, 470 F.2d 455 (D.C. Cir. 1972), which is discussed at length on the very next page of Scalia & Gardner. There, our Circuit Court had to determine the reach of the adverbial phrase "*when on duty*." The D.C. Code prohibited carrying a concealable pistol, but the prohibition did not apply to "'jail wardens, or their deputies, policemen or other duly appointed law enforcement officers, or ***to*** members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty.'" Scalia & Gardner, *supra*, at 150 (quoting D.C. Code Section 22-2305 (1932) (emphasis added). The authors note that the Circuit "reversed the conviction because the statute did not apply to jail wardens whether or not they were on duty." *Id.* The authors commended the Circuit for its textual reading: "The court was right about the result and about the comma, but it was the *to* rather than the *or* that set the last phrase apart." *Id.* (emphases in treatise).

Scalia and Gardner observe, "Perhaps more than most of the other canons, this one is highly sensitive to context," and they then give an example of a postpositive modifier absent the insertion of a determiner in which the modifier did <u>not</u> reach back to the first word in the series. Even assuming for the sake of argument if the government's reading of the sentence is "natural" – and counsel's high school English teacher would concur with Scalia & Gardner that it is not –

"[t]he most grammatical reading of a sentence in a vacuum does not always produce the best reading in context." *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2447-48 (2021) (rejecting D.C. Circuit's application of the series-qualifier canon in manner advanced by the government and statutory construction and reversing Indian-Tribe recognition decision in *Confederated Tribes of the Chehalis Rsrv. v. Mnuchin*, 976 F.3d 15, 22-23 (D.C. Cir. 2020)). To the extent that there are "ambiguities" in the language, the text "will be interpreted" out of respect to other interpretive devices. Scalia & Gardner, *supra* at 150-51. They identify the rule of lenity as one such controlling force. *Id.* at 30-31 ("In statutory interpretation there is, for example, the rule of lenity, whereby ambiguity in a criminal law is resolved in favor of the defendant.").[2]

The above interpretative canon is related to the "rule of the last antecedent," another canon of construction that courts apply to the interpretation of statutes that include multiple terms followed by a limited clause. *See Barnhardt v. Thomas*, 540 U.S. 20, 26 (2003). The rule provides that a "limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it *immediately* follows." *Id.* (emphasis added). "The rule reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Lockhart v. United States*, 577 U.S. 347, 351-52 (2016) (applying canon to statutory construction and limiting culpability under 18 U.S.C. § 2252(b)(2)).

In *Barnhardt*, the U.S. Supreme Court cited with approval its prior application of this rule of statutory construction in *Mandel Brothers, Inc.*, 359 U.S. 385 (1959). There a provision of the Fur Products Labeling Act defined "invoice" as "a written account, memorandum, list, or catalog

---

[2] Additionally, the use of the disjunctive "or" in the statute ("the same *or* a different offense") means that the later modifying clauses do *not* carry over to the terms that precede the disjunctive. *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) (citations omitted).

. . . transported or delivered to a purchaser, consignee, factor, bailee, correspondent, or agent, or any other person who is engaged in dealing commercially in fur products or furs." *Barnhardt*, 540 U.S. at 26-27 (quoting *Mandel Brothers*, 359 U.S. at 386 (internal quotations omitted)). The Supreme Court followed the antecedent rule of statutory construction to limit the descriptive phrase only to the last item in the list: "The Court of Appeals in *Mandel Brothers* had interpreted the phrase 'any other' as rendering the relative clause ('who is engaged in dealing commercially') applicable to all the specifically listed categories. This Court unanimously reversed, concluding that the 'limiting clause is to be applied only to the last antecedent.'" *Id.* (internal quotations omitted; citations omitted). Here, the last item is "a different offense." Thus, whether one applies the post-positive modifier rule or the antecedent rule, the government's reading that the statute authorizes both terms of incarceration and terms of probation for the same offense is simply incorrect. Moreover, if any ambiguity remains, the Court cannot and should not adopt the government's reading under established law.

The statute simply does not authorize a harsh increase in petty offense punishment. If Congress had wanted to so drastically change the sentencing scheme for petty offenses, it would have done so in an explicit manner. The power to punish criminal defendants must be explicit. *See Ex Parte United States*, 242 U.S. 27, 41-42 (1916) ("Indisputably under our constitutional system the right . . . upon conviction to impose the punishment provided by laws is judicial . . . [b]ut the authority to define and fix the punishment for crime is legislative. . . ."); *see also United States v. Libby*, 495 F. Supp.2d 49, 55-56 (D.D.C. 2007) (citing *Ex Parte United States* for proposition that Congress has "exclusive prerogative" to "specifically and expressly limit the applicability of a particular sanction to a particular situation"). In *Bell v. United States*, the U.S. Supreme Court faced the question whether transportation of two women on the same trip and in

the same vehicle in violation of the Mann Act constituted a single offense. *Bell v. United States*, 349 U.S. 81, 83-84 (1955). In holding that there was only one offense, the Supreme Court explained that the statute could reasonably be read either way, but that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id.* The Supreme Court stressed that the holding reflected a "presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. *Id.* The Supreme Court emphasized that "if Congress did not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id. See also Ladner v. United States*, 358 U.S. 169, 178 (1958) ("policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.").

The government's argument about absurdity is hard to follow. The government seems to say that the more prison time one receives, the less supervised release is necessary. *See* Gov't Reply at 5-6. But courts regularly sentence defendants with lengthy prison sentences to the maximum authorized supervised release term because the length of supervised release is related to the severity of the charge and the defendant's criminal history. Also, generally speaking, the more prison time imposed, the more supervision imposed upon release.  *Cf.* 21 U.S.C. § 841 (authorized supervised release terms increase as statutory penalties increase). As Mr. Torrens sets out in his earlier brief, it makes sense that if a defendant is convicted of two petty offenses, the person can receive a different type of sentence (*i.e.*, probation or imprisonment) for each of the criminal acts. One offense may be the basis for more supervision; the other might warrant straight incarceration time. Contrary to the government's account, *see* Gov't Reply at 6, that is a

sensible, not absurd outcome. Additionally, Congress clearly recognizes that community supervision following incarceration – through supervised release – is necessary only in more serious offenses and has elected not also to allow supervised release for petty misdemeanors. Such a result is not "absurd," as the government contends, *id.* The cases are "petty" – by statute they require either jail time, or community supervision – through probation – not both.

Nor, while criticizing Mr. Torrens' references to legislative history, *see* Gov't Reply at 5, does the government itself provide any legislative history that supports the authorization of a district court to sentence a petty misdemeanant to both imprisonment and probation. The Senate Report cited by the government makes no reference to petty offenses and only talks about probation as an alternative to incarceration and associated supervised release. *See* S. Rep. 98-228 at 69-70 (1983).[3] Additionally, unlike in the cases cited by the government where the changed language is obviously materially different, the legislative history here is consistent with the natural reading of the statute and with how § 3561(a)(3) fits under and with § 3551(b). And the legislative history is provided to this Court not as "decisive significance," *Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) but as informative, persuasive authority. *See Colon-Marrero v. Conty-Perez*, 703 F.3d 134, 137-38 (1st Cir. 2012) (statutory interpretation includes "textual signals and the legislative history"); *United States v. Laton*, 352 F.3d 286, 296 n.10 (6th Cir. 2003) (legislative history can inform ambiguous text).

Finally, The Court should reject the government's invitation to re-write the statute to allow for both terms of imprisonment and community service (through probation) for the same petty offense. *See* Gov't Reply at 4-5 (arguing that Congress must have wanted some degree of supervision to follow imprisonment available – through probation – because "supervised release

---

[3] The government miscited the pin cite as 89.

is not available for a petty offense"). This argument makes little sense. If Congress wanted to provide some degree of supervision for a person sentenced to incarceration for one single petty offense, it could have and would have amended 18 U.S.C. § 3583(b)(3) by simply removing "(other than for a petty offense)" to make supervised release available for all misdemeanors. The fact that Congress did not do so is further evidence that it did not wish to allow such a scheme.

        3.   <u>The government's interpretation invites a new reading of § 3561(a)(3) that raises significant constitutional questions</u>

The government's interpretation invites a new reading of § 3561(a)(3) that raises significant constitutional questions. The correct reading of § 3561(a)(3) as provided by Mr. Torrens makes particular sense in these January 6 Parading, Picketing, and Demonstrating cases given the drastic change in Class B misdemeanor sentencing that would arise from the government's interpretation. Specifically, under the government's theory and without explicit congressional approval, petty offenses would become punishable by six months of imprisonment *and* five years of probation. This is in stark contrast to the now-accepted punishment of six months or imprisonment *or* five years of probation. *United States v. Nachtigal*, 507 U.S. 1 5 (1993) ("the federal DUI offense carries a maximum fine of $5,000, and respondent faced, *as an alternative to incarceration*, a maximum 5-year term of probation" (emphasis added)).[4] This is so because while defendants charged with petty offenses are presumptively not entitled to a jury trial, a defendant can overcome this presumption by showing "that the additional penalties, viewed together with the maximum prison term" are "so severe" that the crime is a "serious" one. *Id.* (citing *Blanton v. North Las Vegas*, 489 U.S. 538, 541-43 ((1989)). The potential to

---

[4] Tellingly, outside *Posley*, the government cites not a single case from this Court or any other court that authorized a district court to sentence a petty misdemeanant to both imprisonment and probation. Because to do is unlawful.

punish a petty offense with a six-month term of imprisonment followed by five years of probation may be severe enough to rebut the presumption that a defendant is not entitled to a jury trial. *Id.* (explaining that presumption against jury trial right in Class B misdemeanors can be overcome if the punishment is severe enough to trigger the Sixth Amendment). In short, the government's arguments conjure constitutional questions that should be avoided. *See, e.g.*, *United States v. Jin Fuey Moy*, 241 U.S. 394 (1916) (statutes should be construed to avoid constitutional questions); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[The constitutional avoidance] canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations.").

### B.  Courts Should Not Order Confinement as Condition of Probation in Petty Offense Cases

A period of incarceration as a special condition of probation would be inconsistent with the purpose of probation. Probation is intended to help a defendant remain a part of his community while still under intense supervision. A term of probation provides "an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official." *United States v. Roberts*, 320 U.S. 264, 272 (1943); *see also Burns v. United States*, 287 U.S. 216, 220 (1932) (purpose of probation is "to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable"); *United States v. Gordon*, 961 F.2d 426, 432 (3d Cir. 1992) (fundamental nature of probation outlined in *Burns* unchanged by enactment of Sentencing Reform Act of 1984).

Congress established certain mandatory conditions of probation and allowed for many enumerated discretionary conditions as well – including (b)(10) – confinement "during nights,

weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offenses, . . ." The Senate Report notes that when a court orders incarceration as a condition of probation, intermittent incarceration may be appropriate for "educational or employment purposes" or "for a week or two during a work or school vacation." *Id.* at 3281. Counsel contends that such a period of time is inapplicable to petty misdemeanors, and if the Court were to apply it to a Class B misdemeanor, the same constitutional concerns about overcoming the presumption against a jury trial apply. *See supra* Section A.3.

On October 21, 2021, in *Griffith*, the Court issued a Minute Order in which it directed "the parties to submit, their positions on whether, under 40 U.S.C. §5104(e)(2)(G), a sentence of a period of incarceration may be followed by a period of probation, pursuant to 18 U.S.C. § 3561(a)(3)." The Court's order did not appear to contemplate imposing a period of incarceration as a condition of a term of probation. After receipt of the government's memorandum and defendant Torrens' response, on October 22, 2021, the Court issued a subsequent Minute Order that expanded its direction "whether when probation is imposed for a petty offense Class B misdemeanor, any incarceration may be imposed only in intermittent intervals and not continuously as a special condition of probation, under 18 § U.S.C. 3563(b)(10), if at all."

The government recognizes that a sentencing court in a non-petty offense case may combine incarceration and probation only where incarceration is made a condition of probation and imposed through "intermittent confinement." Gov't Reply at 6. The questions as to whether and to what extent intermittent confinement can be given as a condition of probation for a petty offense appear as open questions not previously addressed by the courts. For petty offenses, it is difficult to see what is limiting factor as to "intervals of time" and it is very difficult to identify when so-called confinement has not turned into an unlawful term of imprisonment – particularly

when the analysis began as whether 18 U.S.C. § 3561(a)(3) permits a sentence of a term of imprisonment and a term of probation. For a petty offense, even a night or a weekend, never mind a longer "interval," can serve as a term of imprisonment. The answers may come down to the difference, if any, between a term of imprisonment as the punishment and confinement as a condition of a probationary term given as the punishment. Notably, a single day in jail can serve as a "term of imprisonment," *see* 18 U.S.C. § 3581(b)(9) (term of imprisonment "not more than five days"), and it is difficult to see how the imposition of *any* time in jail, regardless of the mechanism, in a petty offense is not viewed as imprisonment versus a rehabilitative effort. Should a sentencing court seek to impose "intermittent confinement" as a condition of probation, it is likely that defendants will litigate and appeal the condition.

An intermittent sentence would be particularly problematic in Mr. Torrens' case. Counsel for Mr. Torrens observes that on October 20, 2021, counsel advised the government that counsel had explored the possibility of weekends in jail or other intervals in jail for Mr. Torrens. As for short intervals in jail, counsel learned and reported to the government that "even if the Court puts on the sentencing order that Mr. Torrens is to receive his Suboxone, it is very unlikely that he will receive the medicine on weekends in jail, and that he will then undergo repeated episodes of withdrawal. Mr. Torrens participates in regular care and counseling with a medical doctor for his addiction and gets his prescription weekly from the doctor for Suboxone. Jails often don't give court-ordered prescribed medicine for the first 1-3 days as the required medical doctor who can write the script usually doesn't work weekends." As to intervals of 7 days at a time, counsel advised the government that those periods interfere with his custodial care of his daughter. Counsel further observed that for any incarceration sentence will be a more onerous one than under typical circumstances as, given COVID-19 safety precautions, he will be housed in

isolation/quarantine for the first 10-14 days of each institutional admission. And despite precautions, each admission to an institutional setting increases the risk of contracting a COVID-19 variant and endangering M. Torrens' health and ability to care for his daughter and attend work. Counsel adheres to all those concerns specifically as to Mr. Torrens with any interval of incarceration given in his particular case, and will be prepared to answer questions from the Court.[5]

### Conclusion

Mr. Torrens submits the above information for the Court's consideration and in support of Mr. Torrens' request that the Court impose him to a term of probation, with conditions that include home confinement if deemed appropriate by the Court.

Respectfully Submitted,

/s/ EDWARD J. UNGVARSKY
Edward J. Ungvarsky
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
Office - 571 207 9710
Cellular – 202 409 2084
ed@ungvarskylaw.com
Counsel for Eric Chase Torrens

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Supplement was served ECF to the government and all registered recipients on this 27rd day of October, 2021.

/s/ EDWARD J. UNGVARSKY
Edward Ungvarsky

---

[5] Mr. Torrens objects to a sentence in his case of a term of probation with intermittent confinement pursuant to 18 U.S.C. § 3563(b)(10) as an improper application of the federal sentencing provisions, a constitutional violation of his rights under the Fifth, Sixth, and Eighth Amendments, and as a sentence "greater than necessary" pursuant to 18 U.S.C. § 3553(a).